UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

PARNELL VAUGHN,

        Plaintiff,

   -v-                               No.  1:22-CV-3221-LTS

METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

        Defendants.

--------------------------------------------------------x

### MEMORANDUM ORDER

Plaintiff Parnell Vaughn ("Plaintiff" or "Vaughn") brings this pro se action against Defendants Metropolitan Transit Authority ("MTA"), New York City Transit Authority ("NYCT"), and Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA") (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201 et seq., as well as "other applicable federal, state, city and local statutes," for denial of minimum wage and overtime pay and for retaliation. (Docket entry no. 19 (the "Amended Complaint" or "AC").) Plaintiff seeks nearly $7,000,000 in damages. (AC at 6.) The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.

Defendants move jointly to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket entry no. 9 (the "Motion to Dismiss").)[1]   The Court has

---

[1]     The Motion to Dismiss was filed on May 16, 2022, in response to Plaintiff's original complaint (docket entry no. 1). On June 7, 2022, Plaintiff filed the Amended Complaint, with his opposition to the Motion to Dismiss attached as an exhibit (AC at Ex. 13 ("Pl. Mem.").) The Court properly construed the Amended Complaint as the operative complaint in the action (docket entry no. 15), and then ordered Defendants to file a letter within seven days, stating whether the Motion to Dismiss should be deemed moot without prejudice to refiling, or if the Court should evaluate the Motion to Dismiss in

reviewed the parties' submissions thoroughly.  For the following reasons, Defendants' motion to dismiss is granted in its entirety.

<u>BACKGROUND</u>

The following facts, which are alleged in the AC or drawn from documents integral to the AC, are taken as true for the purpose of resolving the Motion to Dismiss.  Plaintiff has been employed by the Defendants[2] as a conductor since July 17, 2017.  (AC at 8.)  On July 23, 2018, Plaintiff was spit on by a passenger.  (Id.)  Later that day, Plaintiff filed a claim for workers' compensation, and for workers' compensation differential payments, which Plaintiff also refers to as "assault pay."[3]  (Id.)  The claim appears to have resulted in three decisions by the Workers' Compensation Board (the "Board"), captioned under case number G2264169, copies of which of which Plaintiff has proffered as attachments to the Amended Complaint.  (AC at Exhibits 4, 4(a), 4(b).)   On each decision, NYCT is listed as Plaintiff's employer.  (Id.)

---

light of the facts alleged in the Amended Complaint.  (Id.)  Five days later, on June 13, 2022, Defendants filed, along with their reply (docket entry no. 18), a letter requesting the Court to evaluate the Motion to Dismiss in light of the facts alleged in the Amended Complaint (docket entry no. 19).

[2]    Although Plaintiff asserts that he is employed by each Defendant (AC at 5), <u>see</u> <u>Mateo v.</u> <u>Universal Language Corp.</u>, No. 13-CV-2495, 2015 WL, 5664498, at *1 (E.D.N.Y. Sept. 24, 2015) (dismissing FLSA claim where plaintiff "was not employed by" defendant at relevant time period), Defendants assert that Plaintiff is employed only by the NYCT. (<u>See</u> docket entry no. 11 ("Def. Mem.") at 5.)  However, "[f]or the purposes of this motion only, Defendants [do] not argue a distinction between NYCT, MTA, or MaBSTOA."  (Id.)

[3]    Workers' compensation differential payments provide payments to employees injured at work in the amount of any difference between the workers' compensation amount and the employee's full salary.  (AC at Exhibit 1 ("CBA") § 2.7(A).)  Assault pay provides an equivalent benefit for up to two years for employees injured by physical assault.  (AC at Exhibit 2 ("2005 MOU") § 8.)  Plaintiff uses these terms interchangeably in the Amended Complaint.  (AC at 8.)

The first decision, dated November 20, 2020, and documenting the resolution of a hearing held on November 13, 2020, granted Plaintiff three awards, covering the period from August 28, 2019, to May 27, 2020, for a total of $11,334.92, less payments already made and $1,000 for attorneys' fees.  (AC at Exhibit 4 (the "2020 Decision"), Exhibit 10 (the "Letter to TWU").)  Payments totaling $10,334.92 were made on March 9, 2021, satisfying Defendants' obligation to Plaintiff under the 2020 Decision.  (Letter to TWU at 2.)

On November 29, 2021, the Board issued notice of a second decision, documenting the resolution of a hearing held on November 23, 2021, granting the Plaintiff a second set of three awards, covering the period from August 7, 2018, to August 28, 2019, for a total of $27,503.86, less payments already made.  (AC at Exhibit 4(a) (the "2021 Decision").)  Included in the notices of decision for each of the 2020 and 2021 Decisions is a warning to the NYCT that, "[i]f payment is not timely, the Board imposes a penalty equal to 20% of the unpaid compensation . . . [which] is payable to the claimant."  (2020 Decision, 2021 Decision.)  Further, each notice of decision states that, if installments of compensation are not timely paid, the employer is required to "pay an additional amount of 20% of the compensation then due, plus $300, to the claimant," unless excused by the Board.  (Id.)  Pursuant to these provisions, the Board, in a third decision, imposed a $6,000.80 penalty against NYCT in Plaintiff's favor on May 2, 2022, "based upon the award notice being filed on 11/24/2021, the award notice's last paid date of 12/14/2021, the award amount of $28,503.99, and the amount not timely paid of $28,503.99."[4]  (AC at Exhibit 4(b) (the "2022 Decision").)

---

[4]    The basis of the discrepancy between the amount of the award from the 2021 Decision ($27,503.86) and the amount deemed delinquent in the 2022 Decision ($28,503.99) is unclear.

Plaintiff asserts that he was not paid the full amount of these awards, and that he received a workers' compensation differential payment which was "overtaxed." (AC at 10.) In support of his claim for underpayment, Plaintiff proffers copies of various checks he received from NYCT.

The first, which Plaintiff describes as a "payable check of $20,483.01," (AC at 10), but which appears to be a copy of a direct deposit advice, was issued on May 13, 2021. (AC at Exhibit 5 (the "2021 Advice").) The 2021 Advice indicates a payment of $20,483.01 to Plaintiff for "WC Diff" (presumably Workers' Compensation Differential), covering the time period of August 28, 2019, to May 27, 2020. (Id.) Despite indicating a gross amount of $20,483.01 to be paid to Plaintiff, the "net pay distribution" available to Plaintiff for deposit is only $8,962.91. Plaintiff asserts that the 2021 Advice, which shows various deductions for purposes including taxes, 401(k) contributions, and union dues, was "overtaxed with what I call illegal deductions, which I am also seeking reimbursement for as far as the overtaxed portions of that payable check as part of my claim."[5] (AC at 10.) Though Plaintiff's allegations are not completely clear, it appears he bases this allegation on his contention that his workers' compensation differential payment "was overtaxed when it was categorized as regular wages." (AC at 13.) In the Letter to TWU, sent through counsel, Vaughn states that he "did not receive any explanation as to how that figure [of $8,962.91] was calculated and he disputes its accuracy and maintains that it does not comply with the provisions of the Union's CBA." (Letter to TWU at 2.)

---

[5]    Two other checks proffered by Plaintiff (AC at Exhibit 5(b) and 5(c)), are not included as evidence of wrongdoing on the part of Defendants, but "just to show how wages are normally taxed and that regular wages are taxed but the differential check of $20,483.01 was overtaxed when it was categorized (sic) as regular wages . . . ." (AC at 7).

The second check is dated July 2, 2021.  (AC at Exhibit 5(a) (the "2021 Check").)
Included in the 2021 Check, under a column labelled "Current," is indication of a payment,
labelled "Assault Pay," covering a period from August 28, 2019, to May 27, 2020, in the amount
of $640.93.  (Id.)  After unspecified deductions, the total available for deposit from the 2021
Check is reduced to $515.68.  (Id.)  It is unclear what Plaintiff believes the correct payment
amount on this check should have been, but Plaintiff states that he "was seeking the correct
amount owed to me when brought to the attention of the Defendant(s) and TWU Local 100
which I refused to deposit the check of $515.68."  (AC at 8-9 (internal record citation omitted).)

Plaintiff asserts that Defendants acted "in retaliation for pursuing [his] back
wages and overtime [non-payment of awards from the 2021 and 2022 Decisions]."[6]  (AC at 12.)
He asserts that this retaliation took the form of (1) failing to pay the entirety of the penalty
ordered by the WCB in the 2022 Decision; and (2) "giving [him] a disciplinary action notice and
cutting [his] pay . . . for being late because [he] was told by Defendant(s) through an automated
system by phone to come in at a later time which was 21:00 . . . but was told later by the
dispatcher that [he] was suppose[d] to come in at 18:00 . . . ."  (AC at 11-12.)  In support of his
first claimed basis for retaliation, Plaintiff proffers a check, dated May 16, 2022, and labelled
"Payment of Workers' Compensation Benefits . . . 11/24/2022[7] penalty," with a payment amount

---

[6]   Throughout the AC, Plaintiff refers to Defendants' alleged non-payment of awards from
the 2021 and 2022 Decisions as "unpaid wages/overtime."  (See AC at 5, 9, 11, 12.)

[7]   This date is likely an erroneous mistyping of "11/24/2021."  It seems probable that this
check refers to the penalty awarded in the 2022 Decision, which was based on the
Board's finding that NYCT was delinquent on payment of an award granted on
November 24, 2021 (in the 2021 Decision).  Given the date of issuance of the 2021
decision, it appears likely that the description of this check was meant to read
"11/24/2021 penalty."

of $5,080.71, nearly $1,000 below the amount awarded in the 2022 Decision.[8]  (AC at Exhibit

5(e).)  In support of his second claimed basis for retaliation, Plaintiff proffers his time card from

February 27 to March 5, 2022 (AC at Exhibit 8(b)), and a copy of a disciplinary notification,

received by Plaintiff on March 22, 2022, charging Plaintiff with failure to show up to work on

time on March 6, 2022, and recommending issuance of a warning (AC at Exhibit 11).  It is

unclear how the Court is meant to interpret the time card.

<u>DISCUSSION</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 570 (2007)).  This requirement is satisfied when the factual content in the complaint

"allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  <u>Id.</u> (citation omitted).  A complaint that contains only "naked assertions" or "a

formulaic recitation of the elements of a cause of action" does not suffice.  <u>Twombly</u>, 550 U.S. at

555.  In reviewing a motion filed pursuant to Rule 12(b)(6), the court "may consider any written

instrument attached to the complaint, statements or documents incorporated into the complaint

by reference ... and documents possessed by or known to the plaintiff and upon which she relied

in bringing the suit."  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F. 3d 87, 98 (2d Cir. 2007).

"In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the

---

[8]      Plaintiff states explicitly that this instance of underpayment is "not part of [his] FLSA
claim, but in relation to a WCB court order dated May 5th, 2022, for a penalty of
$6,000.80 for not paying the required amounts under the WCB court order of November
29th, 2021."  (AC at 12.)  As Plaintiff brings all claims under the FLSA, the Court
construes this statement as meaning that Plaintiff does not intend to bring a claim for
underpayment on the basis of this proffer.

complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  Sara

Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017)

(citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

Plaintiff appears pro se, and thus the Court is obliged to construe his pleadings

liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the

"strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474

(2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).  But the

"special solicitude" in pro se cases, id. at 475 (citation omitted), has its limits – to state a claim,

pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which

requires a complaint to make a short and plain statement showing that the pleader is entitled to

relief.

FLSA Wage and Overtime Claim (Count One)

Plaintiff alleges that Defendants violated the FLSA, which is legislation that seeks

to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living

necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  "It

does so, in part, by setting substantive wage, hour, and overtime standards."  Calderon v.

Community Preservation Corporation, No. 22-CV-7806-LTS, 2022 WL 16839520, at *1

(S.D.N.Y. Nov. 7, 2022) (citing Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1,

11 (2011)).  Under the FLSA, employers are required to pay employees an amount "not less

than" the prevailing minimum wage, 29 U.S.C. § 206(a)(1), and to pay employees one and one-

half times their regular wage for overtime, 29 U.S.C. § 207(a)(1), among other protections.  To

enforce these provisions, the FLSA "allow[s] for a private right of action by a covered employee

against any employer who violates" its minimum wage and overtime provisions.  Mei Xing Yu

v. Hasaki Restaurant, Inc. 944 F.3d 395, 402 (2d Cir. 2019).  The FLSA does not, however,

govern enforcement of workers' compensation awards, and claims seeking enforcement of such

awards may not properly be brought under the FLSA.[9]  As Defendants correctly note, although

Plaintiff states that Defendants "continuously [held] [his] back pay wages / overtime,"  (AC at 5-

6), he does not provide any factual allegations suggesting that Defendants paid him less than the

minimum wage, or that he worked over forty hours in a workweek and was not paid at least one

and a half times his regular rate of pay.  (See docket entry no. 11 ("Def. Mem.") at 6.)  Instead,

he alleges underpayment and "overtax[ation]" of the benefits awarded to him under the 2021 and

2022 Decisions.  Neither the FLSA, nor any other federal statute that the Court can identify,

provides a vehicle for Plaintiff to assert these claims.  Accordingly, Defendants' motion to

dismiss Plaintiff's claim for unpaid minimum wage and overtime under the FLSA is granted.

FLSA Retaliation Claim (Count Two)

    Plaintiff also alleges that Defendants retaliated against him, in violation of the

FLSA's antiretaliation provision, for bringing a claim for workers' compensation.  "The FLSA's

---

[9] Under New York's Workers' Compensation law, enforcement of an unpaid workers' compensation obligation is properly sought as follows: "the chairman in any such case or on the chairman's consent any party to an award may file with the county clerk for the county in which the injury occurred or the county in which the employer has his principal place of business, (1) a certified copy of the decision of the workmen's compensation board awarding compensation or ending, diminishing or increasing compensation previously awarded, from which no appeal has been taken within the time allowed therefor, or if an appeal has been taken by an employer who has not complied with the provisions of section fifty hereof, where he fails to deposit with the chairman the amount of the award as security for its payment within ten days after the same is due and payable, or (2) a certified copy of the demand for deposit of security, or (3) a certified copy of the chairman's order imposing, and the demand for payment of, such assessment, and thereupon judgment must be entered in the supreme court by the clerk of such county in conformity therewith immediately upon such filing."  N.Y. Workers' Comp. Law § 26 (McKinney 2023).

antiretaliation provision makes it 'unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under [the FLSA]." Marcotte v. City of Rochester, 677 F. App'x 723, 726-27 (2d Cir. 2017) (quoting 29 U.S.C. § 215(a)(3)); see also Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011) ("To fall within the scope of the [FLSA's] antiretaliation provision, a complaint [by an employee] must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."). Plaintiff states that he believes Defendants retaliated against him for "pursuing [his] back pay wages and overtime" (AC at 12), but the Amended Complaint only contains factual allegations concerning Plaintiff's filing a grievance regarding payment of the award from the 2021 Decision, which does not implicate rights under the FLSA.  (AC at Exhibits 7, 9, 10, 11.)  The Amended Complaint therefore contains no allegations of activity by Plaintiff that could be construed as the filing of a complaint, or institution of any proceeding, implicating a violation of the FLSA.  On these facts, Plaintiff fails to state a retaliation claim for which relief may be granted under the FLSA or any other federal statute.  Defendants' motion to dismiss Plaintiff's claim for retaliation is therefore granted.  In light of his pro se status, Plaintiff will be given an opportunity to replead his FLSA retaliation claim.  If Plaintiff chooses to file a second amended complaint, he should allege facts suggesting that he asserted rights protected by the FLSA (e.g., minimum wage and overtime pay) and that Defendants retaliated against him because of that assertion.

Hybrid Claim under Labor Management Relations Act (Count Three)

Although Plaintiff does not name TWU as a defendant, the factual allegations contained in the AC indicate that Plaintiff may be seeking to assert a hybrid section 301/ breach

of duty of fair representation claim (a "Hybrid Claim") under the Labor Management Relations

Act ("LMRA") against Defendants and TWU:[10]

> The Defendant(s) and TWU [] who are both responsible for upholding the
> agreement of the CBA has failed or refused to especially when it comes to
> grievances . . . . [a]lso it appears that the TWU [] has violated my right to
> fair representation based on the TWU [] failure to uphold the CBA as well
> as emails I received from the Defendant(s) showing communications
> between Jesse Argueta from TWU [] and Valerie Dabas who is the Labor
> Relations Director for the Defendant(s) . . ..

(AC at 4-5.)  A Hybrid Claim "pairs a claim that the employer breached the CBA with a claim

that the union representing the employee failed to enforce the employee's rights under the CBA,

in breach of the union's duty to fairly represent its members."  Klika v. Tuckahoe Police

Organization, Inc., No. 18-CV-5031-NSR, 2020 WL 2097606, at *3 (S.D.N.Y. May 1, 2020)

(collecting cases).  Although a Hybrid Claim, "as a formal matter, comprises two causes of

action," "the two claims are inextricably interdependent."  DelCostello v. Int'l Broth. of

Teamsters, 462 U.S. 151, 164 (1983) (citation omitted).

Plaintiff's Hybrid Claim is not cognizable under federal law because Plaintiff is a

public employee.  "[T]he LMRA explicitly excludes from its protections employees who are

employed by, inter alia, 'any State or political subdivision thereof.'"  Klika, 2020 WL 2097606,

at *3 (quoting 29 U.S.C. §§ 152(2), 152(3) (LMRA provisions defining "employer" and

"employee" for purposes of the statute)); see also Cunningham v. Local 30, Int'l Union of

---

[10]      Hybrid § 301/fair representation claims may properly be brought by an employee against
both the employer and the employee's union.  See Baumgart v. Stony Brook Children's
Service, P.C., No. 03-CV-5526-DRH-WDW, 2005 WL 2179429 (E.D.N.Y. Sept 9, 2005)
("When the union representing the employee in the grievance/arbitration procedure acts
in such a fashion as to breach its duty of fair representation[,] an employee may bring suit
against both the employer and the union, notwithstanding the outcome or finality of the
grievance or arbitration proceeding.") (internal alterations and citation omitted), aff'd 249
F. App'x. 851 (2d Cir. 2007).

Operating Eng'rs, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) ("Courts have held that they lack subject matter jurisdiction over hybrid claims by public employees because a public employer is not an 'employer' within the meaning of the LMRA.") (collecting cases); Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004) ("The [Labor Management Relations Act], however, does not vest federal district courts with subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation.").  The Court therefore concludes that, to the extent Plaintiff seeks to assert a Hybrid Claim against Defendants and TWU, he has not stated a claim upon which relief may be granted.

Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile.  See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Curoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).  Because Plaintiff may be able to allege additional facts to state a valid claim for retaliation under the FLSA, the Court grants Plaintiff twenty-eight days' leave to file a second amended complaint to detail his retaliation claim only. [11]

---

[11]    As the Court is dismissing all of Plaintiff's claims regarding his workers' compensation award, it declines to address Defendants' additional arguments that (1) Plaintiff's claims are barred by workers' compensation law and (2) that Plaintiff lacks standing to sue. (Def. Mem. at 6.)

Here, Plaintiff does not assert claims suggestive of any other violation of federal law, nor provide any evidence that would appear to support the exercise of diversity jurisdiction of non-federal claims against Defendants.  Plaintiff indicates in his complaint that he resides in New York, precluding complete diversity of citizenship with Defendants (who are citizens of New York)[12], and therefore precluding the exercise of diversity jurisdiction.  See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998) (explaining that a case falls within a federal district court's diversity jurisdiction only if diversity of citizenship among parties is complete).  The Court therefore declines to grant Plaintiff leave to amend his complaint as to Count One and Count Three, as the Court finds that Plaintiff cannot plead any additional facts as to these Counts to state a federal claim.

Supplemental Jurisdiction

To the extent that Plaintiff seeks to assert any state law claims based on the allegations contained in the AC, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. section 1367(c) of any such claims in light of the dismissal of Plaintiffs' federal claims, and his state law claims are therefore dismissed without prejudice to pursuit in an appropriate forum.  A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of

---

[12]     All Defendants are public benefit corporations with their principal place of business in New York, and are therefore, for purposes of diversity jurisdiction, New York residents.

jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  Nothing in this order prevents Plaintiff from re-asserting his state law claims in state court.

CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint is granted in its entirety.  Counts One and Three are Dismissed.  Plaintiff is granted leave to replead as to Count Two only, and only insofar as that Count relates to retaliation for activity concerning rights (such as minimum wage and overtime pay) protected by the FLSA. Any such amended complaint shall be filed and served within 28 days from the date of this Memorandum Order.  If this claim is not timely repleaded, it will be dismissed with prejudice and without further advance notice to Plaintiff.  This Memorandum Order resolves docket entry no. 9.  The Clerk of Court is respectfully directed to mail a copy of this Memorandum Order to Plaintiff.


        SO ORDERED.

Dated: March 27, 2023
        New York, New York

                                                /s/ Laura Taylor Swain
                                                LAURA TAYLOR SWAIN
                                                Chief United States District Judge